**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2021[*]
Decided March 24, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-1798

| | |
|---|---|
| WILLIAM A. WHITE, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 18-cv-841-RJD |
| FEDERAL BUREAU OF INVESTIGATION, et al., <br> *Defendants-Appellees*. | Reona J. Daly, <br> *Magistrate Judge*. |

**O R D E R**

This interlocutory appeal involves a denial of William White's request that the district court order the Federal Bureau of Investigation to produce immediately tens of thousands of unreviewed documents about white supremacy and white nationalism. White had requested those documents under the Freedom of Information Act, and the FBI agreed to review and produce them at a rate of 500 pages per month, in keeping

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

with its policy for large requests. The district court refused to order the Bureau to pick up the pace of its production. White has appealed the denial of that injunction while his other claims remain pending in the district court. We have jurisdiction over this appeal, but because the district court did not err in refusing to compel faster production, we affirm.

White, a federal inmate, seeks the FBI's records of white supremacists, white nationalists, and their affiliated groups to see if the agency is improperly investigating them. He sent the FBI 57 requests under FOIA between 2017 and 2018, some of which the Bureau denied and ten of which it approved for processing. Dissatisfied, White sued the FBI, along with other agencies from which he sought similar records, alleging that they improperly had withheld documents under FOIA, 5 U.S.C. § 552(a)(3)(A). He sought an injunction ordering the agencies to turn over the documents immediately. White and the FBI later cross-moved for partial summary judgment. The FBI argued that it had properly denied most of White's FOIA requests. And, for the ten requests that it had approved—which involved about 55,000 pages of documents—the FBI maintained that it was reasonably producing those documents. Adhering to the agency's production-rate policy, it was reviewing and turning them over at a rate of 500 pages per month. It explained that an analyst must review each document line by line before release, and its release policy prevents one requester from consuming inordinate resources to the detriment of other requesters. White responded that 500 pages per month was not "prompt" disclosure under FOIA—at that rate, he will have to wait nine years to receive the requested documents—and so he was entitled to injunctive relief commanding a faster turnover.

A magistrate judge, presiding with the parties' consent, see 28 U.S.C. § 636(c)(1), ruled for the FBI on the cross-motions for summary judgment. As relevant to this appeal, she ruled that 500 pages per month was an adequate pace to produce the ten requests that the FBI had approved. The judge reasoned that, given the FBI's limited resources and the absence of a public need for faster production, 500 pages per month was sufficient. White filed a motion for reconsideration, which the judge denied. The judge ordered that summary judgment be entered for the FBI "at the close of the case."

Before turning to the merits of White's interlocutory appeal, we consider our jurisdiction. Normally, appellate courts have jurisdiction only over final judgments. 28 U.S.C. § 1291. But there is a statutory exception for "[i]nterlocutory orders … refusing … injunctions." 28 U.S.C. § 1292(a)(1). See also *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 811–12 (7th Cir. 2018). This appeal falls within that exception: White expressly invoked 5 U.S.C. § 552(a)(4)(B), which allows a district court "to enjoin

the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." When the district court granted partial judgment for the FBI, albeit postponing formal entry of that order until the case's "close," it effectively denied the preliminary injunctive relief that White sought. See *Chicago Joe's Tea Room*, 894 F.3d at 812.

The FBI offers two reasons why, in its view, we do not have appellate jurisdiction, but neither argument persuades us. First, it argues that under *Carson v. American Brands, Inc.*, 450 U.S. 79, 84–5 (1981), we cannot review a ruling that denies injunctive relief unless the appealing party faces irreparable harm. But that approach effectively makes a finding of jurisdiction dependent on the ultimate merits, since a preliminary injunction cannot be entered unless the party can demonstrate irreparable injury. See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, the defendants overread *Carson.* There the district court refused to enter a proposed consent decree in a certified class action, where the decree included injunctive relief. In order to tease out what might be appealed, the Supreme Court paid heed to the fact that the district court's order bore the hallmarks of injunctive relief, including the risk of irreparable harm to the petitioners.

In that context, the question arose whether the consent-decree order fell within the scope of section 1292(a)(1). The Supreme Court concluded that the answer was yes: "in refusing to approve the parties' negotiated consent decree, the District Court denied petitioners the opportunity to compromise their claim and to obtain the injunctive benefits of the settlement agreement they negotiated." *Id.* at 89. The order was thus "an order 'refusing' an 'injunctio[n]'" and immediately appealable. See also *Holmes v. Fisher*, 854 F.2d 229, 231–32 (7th Cir. 1988). White's case is even more straightforward. His appeal concerns *only* a request for preliminary injunctive relief, not the approval of a global consent decree, and his petition was denied. That is enough to secure our jurisdiction over the interlocutory appeal. See 28 U.S.C. § 1292(a)(1)*; Chicago Joe's Tea Room*, 894 F.3d at 812. The question of irreparable harm is important, no doubt, but it is one for the merits.

The FBI also contends that appellate jurisdiction is absent because White can still obtain his requested relief—faster production of the FBI's records—if he simply narrows his FOIA requests. True, we do not exercise jurisdiction over injunctive orders when "substantial and similar relief is still available in the district court." *Albert v. Trans Union Corp.*, 346 F.3d 734, 739 (7th Cir. 2003). But the relief that the FBI describes depends on actions *outside* the district court, inasmuch as it requires that White to change his request. And the FBI's suggested change is not the relief that White seeks.

See *id*. at 739–40. White seeks an injunction mandating that the FBI disclose all the documents he wants, right now; narrowing that request would not change the 500-documents-per month rate of production and would require White to accept fewer documents than he believes he is entitled to.

Though our jurisdiction is secure, White loses on the merits of his appeal, because his ultimate likelihood of success is far too low. He challenges only the denial of his request that the FBI release 55,000 pages of documents immediately. FOIA requires that agencies produce non-exempt records "promptly," 5 U.S.C. § 552(a)(3)(A), and courts can order agencies to supply them if "improperly withheld." *Id.* § 552(a)(4)(B); *Rubman v. U.S. Citizenship & Immigr. Serv.*, 800 F.3d 381, 386 n.1 (7th Cir. 2015). But under § 552(a)(6)(D)(1), agencies may develop regulations "for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests." And the Department of Justice has done so, allowing agencies such as the FBI to "designate additional processing tracks that distinguish between simple and more complex requests based on the estimated amount of work or time needed to process the request." 28 C.F.R. § 16.5(b). The FBI's policy for requests exceeding 500 pages of documents is one of those contemplated tracks that allows for measured production of large FOIA requests.

Furthermore, the district court permissibly ruled that the FBI's application of its policy did not warrant an injunction. The policy does not prohibit all requests for immediate release of large amounts of documents. Rather, FOIA, 5 U.S.C. § 552(a)(6)(E), and the DOJ's regulations, 28 C.F.R. § 16.5(e), allow for expedited production if the requester's safety is in danger, the public's need to know about governmental activity is urgent, or widespread media interest raises questions about the government's integrity. *Id.* at 16.5(e). White does not attack this standard on its face, and the court reasonably ruled that White did not meet it. Although he argued that the public has an interest in his receiving the documents quickly, he did not specify, let alone substantiate, that interest. Nor did he show any safety threat, public urgency, media interest, or concerns of government integrity. Thus, the district court reasonably concluded that the FBI was not improperly withholding documents by following its statutorily permissible policy and producing documents at 500 pages per month.

We have considered White's other arguments, and none has merit.

AFFIRMED